We'll hear the next case, Benzemann. May it please the Court. Good morning. My name is Drew Toshloff. I am the attorney for the appellant, Alexander Benzemann. This is the second appeal in this matter, which is an action under the Fair Debt Collection Practice Act, or the FDCPA. It was dismissed earlier on the statute of limitations grounds. The statute of limitations for the FDCPA holds that the action should be brought within a year of the occurrence of the violation. In the original case, the district court found that the, excuse me, the district court found that the occurrence of the violation was when the restraining notice, which was the basis of this action, was transmitted from the debt collector to the plaintiff's bank. On appeal, the second circuit reversed and said no, the occurrence was when the bank froze the account because at that time there were two things that were satisfied. First, that there was a complete cause of action. And second, that the plaintiff had notice of the cause of action violation of the FDCPA. There might be an argument that the statute could be told until he learned of the problem. Of the actual violation of the FDCPA. The bank accounts were frozen. But all of that occurred on the 13th, December 13th. What happened actually on remand was it was found that Citibank placed a block on the account, is what their internal term is, which blocked access through an ATM and through an online access to the accounts. That was in the evening of the 13th. And the plaintiff then called the bank, what's going on here, tried to find out what was happening. And the bank said, we don't know, you have to call this number tomorrow. The next morning he called the bank, that was the 14th, the bank told him. They told him the details the next day. But he knew his accounts were frozen at that point. That's correct. Lawfully or not, he didn't know whether it was justifiable or not. To the point that he thought he might be having a heart attack. Yes, he was very distressed. Very distressed on the 13th. Absolutely. He experienced injury on the 13th. And he had contacted his lawyer on the 13th. Yes, he called me, yes. I'm also a personal friend. But he called me and we both knew nothing, basically. He seemed to be of the mind that this was a legitimate thing. He didn't know what it was exactly. He experienced this on an earlier occasion. That's correct. He was concerned about that. There's certainly a reason to inquire, but there was no reason to believe that this had been done improperly. To suspect, but not to believe that it had been done. We didn't have any information to say to bring a lawsuit on that date. We didn't have any capability of. You knew enough on December 13th to begin the inquiry. Yes. He contacted you. He contacted me. He asked what we think we should do. Maybe it would be something legal. Even if it's justifiable action against him, it's something where you need a lawyer to negotiate. How long did the case last? It was two days, right? I think it was. The actual imposition of all the sequestering actually was the next day, the 14th, which is when we filed on the 14th. That's all the documents say, December 14th. It was lifted on the 15th. I think it was the 15th that it actually was lifted, yeah. And the actual service of the restraining notice on us was even later. It was mailed by Citibank on the 14th. So, anyway, we did not have actual knowledge of the facts that serve as the basis of an FDCPA action on the 13th. We only got that on the 14th. Right. That's not the question. The question is were you on inquiry notice as of that date for purposes of the statute of limitations? Well, if we have inquiry notice, then we have to be diligent, and we were duly diligent. And the next day, as soon as we could, we got the information. So we actually — Your argument is that that's what — the statute didn't begin to run until that, until the next day. That's correct. That's our understanding of what the original holding was in the first Bensman case. And that requirement that we be aware of the FDCPA violation was actually echoed in another case against also the same defendants here, McCroby v. Palisades, which says that the occurrence does not occur until, first, the cause of action is complete, including injury, and, second, there's actually notice of the FDCPA violation. I wonder if part of the concern here is that, on the one hand, in the opinion itself, Bensman 1, let's say, it plainly states that an FDCPA violation does not occur for the purposes of Section 1692KD until the brank freezes the debtor's account. And that says nothing about notice. But I wonder if the confusion may be that in another part of the opinion, it says the FDCPA violation here did not occur until Citibank froze Bensman's account, because it was only then that he had a complete cause of action and notice of the FDCPA violation. And so that leads to your argument. But we also have the very clear statement by the Court. I think it can be understood to say that it could not have occurred prior to the actual, the start of the period could not have been prior to the actual freezing the account, because that's the injury. That's the final element of the cause of action. But we didn't have all the knowledge of the cause of action. The cause of the cause of action is the thing we need to find out. And then I think if we just follow Bensman 1 as it's fully read, I think as maybe you're appreciating, we have also the judge addressed the discovery rule, which is kind of an interesting area. There's a split in the circuits. There was a recent case in the Third Circuit, Rotisky. It's now been, cert has been granted for that in February, so it's going to the Supreme Court. The issue on the discovery rule, though, was the judge, again, applied the wrong rule. She said that the discovery rule applies to start only when you become aware of the injury. And that's not the right interpretation or expression of the rule. The discovery rule applies to hold the start of the delimitations period until the plaintiff has the facts which form the basis of the cause of action. That's the general expressed rule. On some situations, finding out the injury is the last thing, and then you have the entire cause of action. And those are some cases. And there also were some cases that were cited which have a different discovery rule for a special situation, like under RICO, which is a kind of complicated thing, which has not just damage, but because RICO has two predicate acts, it's a very weird time frame, two predicate criminal acts for the criminal enterprise. And, of course, this is all mentioned in our briefing. Thank you. Thank you. Good morning. May it please the Court. Rob Berkson for Hauslanger & Associates and Todd Hauslanger. Your Honors, when this Court remanded this case to the district court, it did so for two reasons. First, to determine when Citibank froze the account. And second, if it was determined that the account was frozen on December 13, 2011, whether or not the discovery rule applied and gave life to this action. With respect to the first point of remand, it is now crystal clear, after having subpoenaed the operation manager for Citibank and deposed her, and she stated unequivocally, and this is in the record, that the account was frozen on December 13, 2011. In addition, we have a declaration from the appellant, which he states that he knew on December 13, 2011, that his account had been frozen. How did he know? His wife told him. He had heart palpitations. He tried to access the account. He couldn't do so. He contacted his counsel two or three times that very day, and he knew that there was a legal issue here that he had to attend to. But yet he didn't do so, and the claim wasn't filed until after the statute of limitations had run. So there is no dispute here, really. The record is crystal clear that the freeze occurred on December 13, 2011. The case was commenced not until December 14, 2012. What is putting his argument in the best light, I think, is that he didn't have all the details that he would want to put in a complaint as of the 13th. I understand that is his point, and the way I read it, Your Honor, is he's basically saying, I need to know who to sue, but that's not the law. That's not the law in this circuit, and that's not the law, as far as I'm aware, anywhere. He knew that he was injured on the 13th, and that starts the clock. He had the facts upon which a suit could be based, even though he didn't know the details of who the defendant might be. That's right. That's right. And the record is also clear that this is not the first time that this had happened. It had happened before, and the appellant concedes that. His counsel concedes that. So they knew on the 13th that there was a potential claim here. Was there any determination, was there a, was it determined, was it a matter of knowledge generally that Andrew and Alexander had this, there's confused records at the bank on the Social Security numbers, et cetera? Yeah, and apparently the brother was using Mr. Benzeman in this case, the Benzeman in this case, his Social Security number, and that's how there was a false restraint of his account. Is that true the first time? I believe so, yes. And it did, unfortunately, happen again. As Your Honor pointed out, as soon as it was brought to my client's attention, he directed Citibank to remove the restraint, and it was done. And the contact was made with my client, I believe, on the 14th, and my client then immediately contacted Citibank, and Citibank removed the restraint. So this was, you know, clearly a mistake, but the time to move under the FDCPA for a claim based on that mistake was, it was time barred because they waited too long. In terms of the discovery rule, there really is no issue regarding the discovery rule. The court doesn't need to decide it, as Judge Buckle had said below, because the knowledge of the freeze and the freeze itself occurred on the same day. There's no daylight between the two. So the discovery rule doesn't come into play because the plaintiff discovered it on the same day that it was frozen. So your view is that it's not necessary for us to decide the case? It's not necessary for us to wait for the Supreme Court's decision in Wrotsky? Well, that addresses a broader issue, Your Honor, because in that case, if it's decided differently than this Court decided in Benjamin II, it could potentially undo the whole thing because there I believe it's a Third Circuit case where the Third Circuit said that the statute of limitations starts to run at the last point in time when the debt collector undertook to do the act that allegedly violated the statute. So, yes, I mean, there is a potential that this whole thing will unwind if the Supreme Court agrees with the Third Circuit. Unless the Court has any questions, I'll rest on my papers. Thank you. Thank you. Your Honor observed that we didn't have all the details of the cause of action. That's actually, you're leaving out, like, the entire cause of action. The FDCPA penalizes the use of a false document, which is . . . I think that's what's required on doing is trying to point out the differences between your position and your adversary's position. Well, to characterize the elements of the cause of action as details is a little bit, well, I guess maybe I understand you're trying to spin it a little bit. The point is that's very different from saying you're on inquiry notice that the account was frozen. Sure. I think on inquiry notice, that doesn't start the period. Inquiry notice starts your period of diligence, and then you have to take action when you learn having been diligent, and that was the next step. For statute of limitations purposes, it seems to me that the harm, once you're aware of the harm, then you're aware, and you quoted language to that effect, that you're aware of the facts that make out the cause of action. You don't know who the defendant is. You don't know the statute, maybe, although here it's pretty close to knowing that. But you do know that the harm has occurred. But the underlying wrongfulness of it, I mean, I would assume that most of the time if your bank account is frozen, it's legitimate, I hope. I mean, it's not just an FDCPA violation every time. The fact that it happened once in the past doesn't mean that my client would have known for sure. And, in fact, I think the court assumed that my client would have guessed it was the same thing because he had no legal possible seizure of his account, but that's not a record. And, in fact, there's plenty of things. He could have a tax lien put on his account. It could have been a bunch of different things that we didn't know what it was about. And the other thing is this issue of who to sue was raised as sort of a red herring by the court. And it points out that you can file a John Doe action against a joint tort fee without knowing who it is, and that doesn't toll the statute of limitations. But that begs the question. That means you know there's a tort. If you know there's a tort, then you can name a John Doe defendant. But you can't go in and file an action against a John Doe defendant for some unspecified tort based just on an injury. That's insufficient information. And, well, anyway. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.